IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John F. Huntington,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Civil Action No. 6:10-1940-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on February 21, 2006, alleging that he became unable to work on February 2, 2004.[2] The application was denied initially and on reconsideration by the Social Security Administration. On September 19, 2006, the plaintiff requested a hearing. The administrative law judge

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] The plaintiff later amended his alleged onset date to December 30, 2005 (Tr. 21; *see* Tr. 122, noting that the plaintiff worked through December 30, 2005). However, the ALJ considered the time period beginning in February 2004 (Tr. 11).

("ALJ"), before whom the plaintiff and an impartial vocational expert appeared on July 25, 2008, considered the case *de novo*, and on August 28, 2008, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on May 25, 2010.  The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since February 2, 2004 (20 C.F.R. §§ 404.1520(b) and 404.1571, *et seq.*)
>
> 3.  The claimant has the following severe impairments: spondylosis, cardiomyopathy with history of treatment for congestive heart failure, depression, and anxiety/panic disorder (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) at no more than the semi-skilled level with no climbing, crawling, or exposure to work hazards.
>
> 6. The claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

> 7. The claimant was born September 17, 1957 and was 48 years old, which is defined as a younger individual age 45-49, on the alleged disability date and attained age 50 on September 17, 2007, which is defined as an individual closely approaching advanced age (20 C.F.R. § 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).
>
> 9. The claimant has acquired work skills from past relevant work (20 C.F.R. § 404.1568).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§ 404.1560(c) and 404.1566a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2005 through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456

(4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was treated for depression with a history of hospitalization following a suicide attempt in July 2000 (more than five years prior to the amended alleged onset date) (Tr.198-206). The plaintiff has also been diagnosed with and treated for anxiety with panic attacks (*see, e.g.*, Tr. 422-24). He was diagnosed with degenerative disc disease with spondylosis of the thoracic spine (*see* Tr. 212, 325-26, 362, 371, 426, 477, 647, 831). The plaintiff also has history of treatment for congestive heart failure with Doppler study in 2004 showing dilated cardiomyopathy (Tr. 241-42, 259).

An April 2005 examination from the Department of Veterans Affairs ("VA") indicates the plaintiff was unable to lift more than 50 pounds, to stand for more than an

hour, or to drive for more than an hour. The examiner's impression was that the plaintiff had mild spondylosis of the thoracic spine (Tr. 324-26).

In January 2006, the plaintiff reported that he had spent the holidays with his family as well as a close friend visiting from California and was planning a vacation for the spring (Tr. 799). He reported in February 2006 that, despite some increase in his anxiety, he was doing well overall and was not experiencing any depression with medication (Tr. 568). A progress note from the VA describes the plaintiff as alert and oriented with appropriate judgment (Tr. 431). In October 2006, he reported that he was not experiencing any anxiety symptoms, was not experiencing any problems relative to his interpersonal and social interactions, and was without delusions/hallucinations (Tr. 439, 534-35, 538). His recall and memory were slightly impaired (Tr. 535). He was alert and oriented to time, place, person, and situation, with normal thought content and logical and goal-directed thought processes (Tr. 532, 533). He was not experiencing any problems relative to interpersonal or social situations (Tr. 529).

In June 2006, Arthur Wolinsky, M.D., examined the plaintiff at the request of the South Carolina Vocational Rehabilitation Department (Tr. 395-96). Dr. Walinsky noted that the plaintiff's main symptom was lack of stamina. On examination, the plaintiff had normal range of motion in all major joints with no joint effusion; no edema to his extremities; and no joint/extremity deformities with normal gait, station, coordination, and deep tendon reflexes (except for absent ankle jerks bilaterally). Dr. Wolinsky noted that the plaintiff was appropriately groomed and dressed with good personal hygiene and that he was calm and cooperative. The plaintiff was alert and oriented to person, place, and time. Dr. Wolinsky opined:

> The physical findings of an enlarged, displaced and dyskinectic cardiac apical impulse are completely compatible with a cardimyopathy and low EF. . . . The symptoms of extreme fatigue are quite in keeping with an advanced cardiomyopathy.

6

> I can fully understand that this pt. could not do the work of an X ray tech or any other job with similar physical and mental demands.

(Tr. 396).

In January 2007, the plaintiff reported that he was doing well (Tr. 731). His depression was described as being in full remission (Tr. 731). The plaintiff reported in June 2007 that he had recently visited his wife's family in Florida (Tr. 692). Also, he indicated in August 2007 that he had recently enjoyed a trip to Myrtle Beach where he took his son to a water park (Tr. 758). He reported that he continued to care for his garden and turtles (Tr. 758). He said his mood and anxiety had improved, he was sleeping much better, and he was not experiencing any grogginess or over-sedation (Tr. 758). In September 2007, he reportedly was without suicidal or homicidal ideation and had a stable affect and good insight (Tr. 746). The plaintiff also reported in November 2007 that he had recently traveled to Florida with his wife for bike week (Tr. 813).

The plaintiff's treatment providers routinely rated his global assessment of functioning ("GAF") at 60 or above (Tr. 203, 321, 324, 422, 425, 537, 598, 686, 693, 729, 759, 814).[3] Records from the VA spanning the period from December 2006 through November 2007 consistently described the plaintiff as neatly groomed (Tr. 570, 585, 597, 685, 728, 758, 814 ) and as being cooperative, conversive, pleasant, and calm (Tr. 321, 422, 533, 551, 570, 597, 685, 692, 712, 728, 746, 759, 800, 814, 847).

A perfusion scan (a test to measure the amount of blood in the heart muscle) in November 2007 revealed evidence of small myocardial ischemia (Tr. 241-42, 259, 767-72). Two months later, the plaintiff reported he was doing well in general without any chest

---

[3] GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. A GAF rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning; and a rating of 61 to 70 indicates "mild symptoms" or some difficulty in social or occupational functioning, but generally functioning pretty well. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (Text Rev. 4th ed. 2000).

7

pain or shortness of breath (Tr. 875). In June 2008, the plaintiff reported that he had become dizzy after working outside in the heat. Chest x-rays were unremarkable (Tr. 825). The diagnosis was volume depletion, and his condition improved after hydration (Tr. 851, 855).

X-rays of the plaintiff's thoracic spine performed in April 2008 revealed mild to moderate degenerative disc disease (Tr. 830-31).

In March 2006, the plaintiff completed a function report (Tr. 134-41). He indicated that he was able to take care of his personal care without assistance or reminders, prepare complete meals daily, do light laundry, drive, shop three times a week, manage money, watch television, and was able to follow instructions (Tr. 135-40).

In June 2006, the plaintiff spoke with an employee of the Commissioner. He reported that he cooked, cleaned, shopped, managed his money, and drove independently (Tr. 144). He said that he read and watched television (Tr. 144). He said he had not experienced any episodes of syncope for a year (Tr. 144). He said his depression had stabilized, and he was no longer taking medication or receiving follow-up treatment for the condition (Tr. 144). The plaintiff sounded upbeat and positive (Tr. 144).

Two months later, the plaintiff completed another function report (Tr. 160-67). He indicated he was able to take care of most his personal needs, but noted he needed help brushing his hair and that he became easily winded (Tr. 161). He indicated that he prepared small, one-dish meals (Tr. 162). He indicated that he shopped for groceries once a week and was able to manage his money (Tr. 163). He said he was able to follow written instructions (Tr. 165).

At the hearing, the plaintiff testified that he had just turned 50 years old (Tr. 20). He said that he had retired from the Navy and was receiving veteran's benefits (Tr. 21). He said he had a high school education (Tr. 21). The plaintiff testified that he had not worked since December 2005 because he could not meet the demands of his job as an x-

ray technician due to limitations caused by congestive heart failure. He said that his impairment caused shortness of breath, fatigue, sweating, shaking, and chest pain and that he missed two days of work every month. He also complained of degenerative joint disease in his back that caused "excruciating pain" if he sat or stood in one position for any length of time (Tr. 22, 23). He said he took pain relievers and a muscle relaxant to relieve the pain. He said he had not had surgery. He said that he did exercises but had not had physical therapy (Tr. 28). He also complained of panic attacks, which occurred "no more than once or twice a month" since he was taking medication (Tr. 23).

The plaintiff said he could fold the laundry, make the bed, and do other household chores. He said that he could perform 30 minutes of light work or 10 minutes of strenuous work at one time. He spent "practically my whole day" resting or lying down (Tr. 24, 25). He also said that he repaired surfboards at home (Tr. 29).

The plaintiff testified that he was an x-ray technician in the Navy, and he had performed the same job after he retired. He said the work required lifting patients (Tr. 27, 28). He said that he had been a Chief in the Navy for approximately six years. He said that his duties included supervising troops and being the chief of the radiology department (Tr. 31). When asked about the use of computers in the past job, he said his computer skills were "somewhat lacking," but he could use email and "particular programs" related to "military evaluations of the troops" (Tr. 32).

Arthur Schmidt, Ph.D., a vocational expert, also testified at the hearing. He described the plaintiff's past work as an x-ray technician, which was skilled and required light exertion. He said there were no potential transferrable skills from the x-ray technician job to sedentary work (Tr. 30). He said that the plaintiff had acquired supervisory skills and computer skills in past work as a Navy Chief, and that the skills were transferrable to sedentary, semi-skilled work (Tr. 32-34). The ALJ asked Dr. Schmidt to consider a hypothetical person the same age as the plaintiff, with the same work history, education and

transferable skills, who could perform sedentary work with no climbing, no crawling, no exposure to industrial hazards, and no more than occasional crouching and stooping. The ALJ asked whether such a person could perform semi-skilled and skilled work. Dr. Schmidt testified that the person could perform the semi-skilled, sedentary jobs of computer operator and data entry supervisor, citing the number of those jobs in the state and national economies (Tr. 33-34). He said his testimony was consistent with the *Dictionary of Occupational Titles* (Tr. 35).

The plaintiff's counsel asked whether a person who could not maintain attention and concentration and focus on a task for more than 20 percent of the workday could perform the jobs Dr. Schmidt identified. Dr. Schmidt testified that those restrictions would eliminate the jobs he identified and all other work (Tr. 35-36).

## **ANALYSIS**

The plaintiff alleges disability commencing December 30, 2005, at which time he was 48 years old. The ALJ found the plaintiff had the following severe impairments: spondylosis, cardiomyopathy with history of treatment for congestive heart failure, depression, and anxiety/panic disorder. The ALJ further found the plaintiff could perform semi-skilled sedentary work with no climbing, crawling, or exposure to work hazards and could not perform his past relevant work. However, the ALJ determined the plaintiff could perform jobs that exist in significant numbers in the national economy, including the sedentary occupations of computer operator and data entry clerk. The plaintiff argues that the ALJ erred by (1) failing to properly evaluate his credibility; (2) failing to consider his impairments in combination; and (3) finding that he had transferable skills.

### *Subjective Complaints*

The plaintiff argues that the ALJ erred in evaluating his credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996) . A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Moreover, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

11

> (5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

The ALJ found that while the plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 14-15).

The ALJ noted a number of inconsistencies between the record and the plaintiff's complaints. For example, the ALJ observed that the plaintiff allegations were inconsistent with his activities of daily living (Tr. 14). The plaintiff reported taking trips, including one to a water park in Myrtle Beach with his son, a trip to Florida to visit family, and a bike trip to Florida with his wife (Tr. 692, 758, 813). He said that he gardened and tended to turtles (Tr. 758). In addition, the plaintiff testified that he repaired surfboards in his garage (Tr. 29). These activities were inconsistent with the plaintiff's claims of constant disabling pain and thus cast doubt on his credibility. The ALJ may properly consider a claimant's daily activities in assessing his credibility. SSR 96-7p, 1996 WL 374186, at *3.

The ALJ also reasonably found that the plaintiff's complaints were inconsistent with the medical treatment notes, objective evidence, and his own reports (Tr. 14-15). *See* SSR 96-7p, 1996 WL 374186, at *6-7 (stating an ALJ may consider the objective medical evidence); *Craig*, 76 F.3d at 595 (recognizing that, while a claimant's allegations may not be discredited solely because they are not substantiated by objective evidence of the pain

itself, they need not be accepted to the extent they are inconsistent with the available evidence, including the objective medical evidence).

With respect to his physical impairments, the ALJ observed (Tr. 15) that Dr. Wolinsky noted that the plaintiff had normal range of motion in all major joints with no joint effusion; no edema or deformities in his extremities; normal gait, station, and coordination; and normal deep tendon reflexes, except in the ankle jerks (Tr. 396). The plaintiff reported in June 2006 that he had not experienced any episodes of syncope (Tr. 144). The one time that the record shows that the plaintiff complained of dizziness, it was due to dehydration, not to his heart condition (Tr. 851, 855). A chest x-ray in June 2008 was unremarkable (Tr. 825), and a thoracic spine x-ray revealed only mild to moderate degenerative disc disease (Tr. 830-31).

With respect to the plaintiff's mental impairments, the ALJ also found his complaints were not consistent with the medical evidence (Tr. 14-15). The ALJ noted that October 2006 treatment notes showed that the plaintiff was not experiencing anxiety symptoms or problems with interpersonal and social interaction and had no delusions or hallucinations (Tr. 15; *see* Tr. 439, 534-35, 538). In addition, his treatment providers noted that his depression was in full remission in January 2007 (Tr. 731). Further, in September 2007, he reported no suicidal or homicidal ideation and had stable affect and good insight (Tr. 746). Additionally, as the ALJ noted, the plaintiff's GAF scores reflected only moderate symptoms, and treatment notes indicate that the plaintiff was neatly groomed, fully oriented, cooperative, conversive, and calm (Tr. 12, 15; *see* Tr. 203, 321, 324, 422, 425, 533, 537, 551, 570, 585, 597-98, 685-86, 692-93, 728-29, 758-59, 800, 814, 847).

In determining the plaintiff's residual functional capacity ("RFC"), the ALJ also considered Dr. Wolinsky's opinion that the plaintiff could not perform his past work as an x-ray technician or any similar job (Tr. 15; *see* Tr. 396). The ALJ agreed with this assessment and, noting that the plaintiff's past work required light exertion, concluded the

plaintiff could perform sedentary work (Tr. 15). The ALJ also considered an April 2005 treatment note from the VA that indicated the plaintiff was unable to lift more than 50 pounds (Tr. 15; *see* Tr. 324-26). The ALJ noted that while this treatment note predated the amended alleged onset date by eight months, his RFC finding nonetheless allowed for such a restriction.

Based upon the foregoing, this court finds that the ALJ properly considered the plaintiff's subjective complaints, and the credibility finding is based upon substantial evidence.

***Combination of Impairments***

The plaintiff next argues the ALJ erred in failing to consider the combined effect of all his impairments in assessing the RFC. In a disability case, the combined effect of all the claimant's impairments must be considered without regard to whether any such impairment if considered separately would be sufficiently disabling. Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's 'ability to engage in substantial gainful activity.'" *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. *Id.* The cumulative or synergistic effect of the various impairments on the claimant's ability to work must be analyzed. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Throughout his thorough and well-reasoned opinion, the ALJ considered and evaluated the combined effect of the plaintiff's impairments on his ability to work. The ALJ's limitations for sedentary work at no more than the semi-skilled level, with no climbing, crawling, or exposure to work hazards, show he accounted for the symptoms imposed by the combination of the plaintiff's various symptoms, including fatigue (Tr. 13). The ALJ

14

adequately considered the combined effect of the plaintiff's impairments throughout his decision by discussing all of the plaintiff's alleged impairments; finding both severe and non severe impairments at step two (Tr. 11); referring specifically to the plaintiff's "combination of impairments" at step three (Tr. 12-13); stating that he gave "careful consideration [to] the entire record" (Tr. 11, 15); discussing his consideration of "all symptoms" (Tr. 13); discussing each of the plaintiff's impairments (Tr. 11-16); acknowledging the requirement that he consider the effects of "all" of the plaintiff's impairments, including those that were not severe (Tr. 10); discussing the overall functional effects of the plaintiff's impairments (Tr. 13); and including specific exertional and postural functional restrictions in the RFC assessment (Tr. 15). Based upon the foregoing, this allegation of error is without merit.

***Transferable Skills***

Lastly, the plaintiff argues that the ALJ erred in finding that he had transferrable skills. At the hearing, the vocational expert testified that the plaintiff's past work required supervisory and computer skills (Tr. 32). The ALJ then heard testimony from the plaintiff that his "computer skills are somewhat lacking" but he could use email and "particular programs" related to "military evaluations of the troops" (Tr. 32). Subsequently, the vocational expert testified that he was aware of potential transferable skills to the sedentary level at the semi-skilled level (Tr. 33). He further testified that those skills would transfer to the semi-skilled jobs of computer operator and data entry supervisor (Tr. 34). The vocational expert testified that his testimony did not conflict with the *DOT* (Tr. 35). As argued by the Commissioner, the ALJ acted reasonably in relying on the vocational expert's testimony and reasonably concluded that the plaintiff had acquired skills in his prior work that would transfer to semi-skilled jobs existing in the national economy.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald  
United States Magistrate Judge

November 30, 2011  
Greenville, South Carolina